## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| WANDA L. COBB, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:22-CV-1867-B-BH |
| § | |
| FRANK KENDALL, SECRETARY, § | |
| DEPARTMENT OF THE AIR FORCE, § | |
| Defendant. § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendant's Motion to Dismiss and Brief in Support*, filed October 24, 2022 (doc. 31). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I. BACKGROUND

On August 23, 2022, Wanda L. Cobb (Plaintiff) filed this lawsuit against Frank Kendall, Secretary, Department of the Air Force (Defendant), alleging discrimination, retaliation, and harassment on the basis of race, color, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964 (Title VII), mental and physical disability in violation of the Rehabilitation Act of 1967 (Rehabilitation Act), and age in violation of the Age Discrimination in Employment Act of 1967 (ADEA). (docs. 2 at 1; 13 at 2.)[2]

Plaintiff worked for the Department of the Air Force (Agency) as an accounting technician from April 19, 2015 until June 6, 2017. (doc. 14 at 9.) On December 1, 2015, she filed an informal complaint with the Equal Employment Opportunity (EEO) office alleging discrimination and hostile

---

[1] By *Standing Order of Reference* dated August 29, 2022 (doc. 7), this *pro se* case has been referred for pretrial management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

work environment based on race, sex, age, and disability by various management officials. (doc. 13 at 16-25.) She elected to resolve the complaint through the alternative dispute resolution (ADR) process. (*Id.* at 8-15.)

On September 15, 2016, Plaintiff met with an EEO counselor, claiming multiple instances of unlawful discrimination in the workplace since June 28, 2016. (doc. 14 at 55-56.) On January 3, 2017, Plaintiff filed a formal complaint with the EEO office, alleging discrimination and hostile work environment based upon race, color, sex, age, disability, and reprisal by various management officials. (*Id.*) She amended her EEO complaint to assert additional incidents of discrimination and hostile work environment on March 2, March 10, and May 11, 2017. (*Id.* at 2-8.)

On June 6, 2017, Plaintiff was removed from her position, and she appealed her removal to the Merit Systems Protection Board (MSPB) on June 16, 2017. (doc. 32-1 at 14.) While her EEO complaint was still pending, an administrative judge held a hearing on her MSPB appeal on March 29, 2018. (doc. 2 at 3.) At the hearing, Plaintiff and Agency entered into a settlement agreement (Agreement) to "completely resolve globally all issues in any of [her] EEO complaints … as well as the disputed issues raised in [her] appeal before the Merit Systems Protection Board…concerning her removal from Federal employment." (doc. 32-1 at 14.) Under the terms of the Agreement, Agency agreed to cancel Plaintiff's removal action and expunge the removal decision from her official personnel folder, allow her to resign, delete all documentation regarding prior suspensions, provide her a neutral job reference, and pay her a lump sum payment of $15,000. (*Id.* at 14-15.) In exchange, Plaintiff agreed to dismiss her appeal with the MSPB and "her pending EEO complaints" as settled, to resign from federal service effective June 6, 2017, and to not apply for reemployment with the Air Force for a period of three years from the effective date of her resignation. (*Id.*) The

2

MSPB appeal was dismissed as settled the same day. (*Id.* at 22-23.)

On April 16 and April 17, 2018, Plaintiff filed petitions for reconsideration with the MSPB, alleging that the Agreement was unlawful and resulted in fraud and that the administrative judge's "ruling is errored." (*Id.* at 49-50, 54-55.) She alleged that Agency had breached the Agreement and the administrative judge was not impartial and improperly influenced her into settling her case. (*Id.*) She argued that she should be reinstated with backpay and permitted to go forward on her EEO complaints. (*Id.*) Plaintiff also filed a petition for review of the MSPB decision with the EEOC, which was dismissed as premature on May 4, 2018, because her case was then pending before the MSPB. (*Id.* at 59.)

On July 3, 2018, Agency moved to dismiss Plaintiff's EEO complaint with the EEOC on grounds that all her claims were settled by the Agreement. (*Id.* at 1-3.) On June 8, 2020, the EEOC granted the motion and dismissed her EEO complaint, concluding that Agency had timely complied with the terms of the Agreement, and that the parties had settled all matters in controversy in the EEOC case under the Agreement. (*Id.* at 63-65.) On January 28, 2021, Plaintiff appealed the dismissal of her EEO complaint to the EEOC's Office of Federal Operations (OFO), challenging the validity of the Agreement and alleging that Agency had breached it. (*Id.* at 68-70.) On December 21, 2021, OFO concluded that it had no jurisdiction because whether Agency had complied with the terms of the Agreement was a matter under the jurisdiction of the MSPB. (*Id.* at 74-77.) The OFO's decision was affirmed on reconsideration on June 6, 2022. (doc. 2 at 2-4.)

On August 23, 2022, Plaintiff filed this lawsuit. (*See* doc. 2.) She generally alleges that she was subjected to discrimination and harassment based on race, color, sex, age, disability, and reprisal, which involve "issues not resolved through Alternative Dispute Resolution/ADR." (*Id.* at

3

1.) She alleges that she was not given the job she was hired to perform in 2015, and that her employment was suspended and ultimately terminated in 2017. (*Id.*) She also alleges a hostile work environment and harassment that violated the terms and conditions of her employment in retaliation for her EEO complaints. (*Id.*) Plaintiff alleges that Agency did not comply with the terms of the Agreement. (doc. 14 at 1.)[3] She also alleges that the Agreement was one-sided and obtained through fraud, she did not understand the MSPB process, the administrative judge was prejudiced against her, and she had health issues and was not provided reasonable accommodations at the hearing. (docs. 13 at 2; 14 at 1.) She seeks compensatory damages under 42 U.S.C. § 1981A, future pecuniary and non-pecuniary damages of $300,000, backpay and time restored as a GS 09/0510, 600 hours of annual leave, attorney's fees, reimbursement of her medical benefits and Thrift Saving Plan, and an expungement of employment record. (doc. 13 at 2-3.)

On October 24, 2022, Defendant moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction. (doc. 31.) Plaintiff responded on November 12, 2022, and Defendant replied on November 28, 2022. (docs. 31, 47.)

## II. RULE 12(b)(1)

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 31 at 4-5.)

### A. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."

---

[3] Plaintiff also filed two documents containing additional allegations in support of her original complaint without seeking leave of court. (*See* docs. 13, 14.)

4

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient,

5

those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, in support of his motion to dismiss, Defendant provides some of the filings from the EEOC and MSPB actions, including Agency's motion to dismiss the EEO complaint, Plaintiff's MSPB requests for reconsideration, the decisions from the EEOC and MSPB, and the transcript from the MSPB hearing, as well as a declaration by an employee of Agency. (*See* doc. 32-1.) The motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations in her complaint.[4] "Because Plaintiff does not contest [Defendant's] proffered evidence,

---

[4] As noted, Plaintiff supplemented her original complaint without leave of court. (*See* docs. 13, 14); *see also* L.R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence."). Courts must construe the pleadings of *pro se* litigants liberally, as they are held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89 (2007). Additionally, a court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy. *See Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) ("The decision to grant or deny leave to supplement is within the sound discretion of the district court."). These filings are therefore considered in conjunction with Plaintiff's original complaint.

however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09-CV-1721-M, 2010 WL 742452 at *2 (N.D. Tex. Mar. 2, 2010).

**B.    Sovereign Immunity**

Defendant construes Plaintiff's allegations that the Agreement was fraudulent and not entered into knowingly and voluntarily, and that Agency did not comply with the terms of the Agreement, as claims for contract rescission and enforcement, and it argues that the Court lacks subject matter jurisdiction over these claims because the United States has not waived its sovereign immunity and because the Court of Federal Claims has exclusive jurisdiction over contract claims against the United States. (doc. 31 at 5.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). The terms of the consent or waiver define the jurisdictional boundaries to entertain the suit. *Meyer*, 510 U.S. at 475. In general, the scope of a waiver of sovereign immunity is strictly construed "in favor of the sovereign." *Gomez–Perez v. Potter*, 553 U.S. 474, 491 (2008). Plaintiffs have the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

Congress has waived sovereign immunity in actions against the federal government for

7

unlawful employment practices under Title VII, the Rehabilitation Act,[5] and the ADEA. *See* 42 U.S.C. §§ 2000e–5(f), 2000e–16 (Title VII); 29 U.S.C. § 633a(c) (ADEA); 29 U.S.C. § 794a(a)(1) (Rehabilitation Act). It is well established, however, that a federal employee's "damages claim for breach of [an employment] settlement agreement is a breach of contract claim against the United States." *Patterson v. Spellings*, 249 F. App'x 993, 996 (5th Cir. 2007); *see also Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1987) (holding that an action is against the United States where it is "against a federal agency ... and any monetary judgment recovered would expend itself on the public treasury").

The Tucker Act waives the sovereign immunity of the United States for contract claims. 28 U.S.C. § 1491(a)(1). It provides, in relevant part, that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." *Id*. Under the Little Tucker Act, district courts have concurrent jurisdiction over claims upon express or implied contracts "not exceeding $10,000 in amount[.]" 28 U.S.C. § 1346(a)(2). Consequently, when a plaintiff seeks a judgment in excess of $10,000 on a contract with the United States, "the Court of Federal Claims has exclusive jurisdiction." *Patterson*, F. App'x at 996 (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986)); *see Hansson v. Norton*, 411 F.3d 231, 232 (D.C. Cir. 2005) (holding that a claim for breach of a Title VII settlement agreement was a contract claim, and claims exceeding

---

[5] Although Plaintiff alleged disability discrimination claims under the ADA in her complaint, she appears to abandon any ADA claims as her subsequent pleadings only allege claims for disability discrimination under the Rehabilitation Act. (*See* docs. 2, 13, 14.) Moreover, federal employees are not covered by the ADA, and the Rehabilitation Act is their exclusive remedy for disability discrimination. *See* 42 U.S.C. § 12111(5)(B); *Cavada v. McHugh*, 589 F. App'x 717, 718 (5th Cir. 2014); *Carter v. Ridge*, 255 F. App'x 826, 829 (5th Cir. 2007). The rights and remedies afforded under the statutes are almost entirely the same, *Bennett-Nelson v. Lousiana Bd. of Regents*, 431 F. 3d 448, 454 (5th Cir. 2005), and the cases interpreting either section are applicable to both, *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

8

$10,000 belonged with the Court of Federal Claims under the Tucker Act). Plaintiffs bear "the burden of alleging that their claims do not exceed the $10,000.00 jurisdictional limit established by the Tucker Act." *Enplanar, Inc. v. Marsh*, 829 F. Supp. 848, 851 (S.D. Miss. 1992) (citing cases), *aff'd by* 25 F.3d 1043 (5th Cir. 1994).

Here, Plaintiff alleges that she suffered discrimination, retaliation, and harassment during her employment with Agency, she was not given the job she was hired to perform in 2015, and she was suspended and terminated in 2017 due to her race, color, sex, age, and disability. (doc. 2 at 1.) According to her pleadings, she filed an informal EEO complaint about her job placement in 2015 that was referred to ADR and a formal EEO complaint in 2017 about her suspension that was pending before the EEOC. (doc. 13 at 16-25; 32-1 at 55-56.) On March 29, 2018, before the EEOC reached a decision on her 2017 EEO complaint, Plaintiff and Agency entered into the Agreement to resolve all of her pending EEO complaints. (doc. 2 at 3.) Under the terms of the Agreement, Plaintiff was to receive, among other things, a lump sum payment of $15,000. (doc. 32-1 at 14-15.) Plaintiff filed an appeal with the MSPB to rescind the Agreement, which remains pending. She also filed an appeal with the EEOC claiming Agency breached the Agreement, and it was dismissed for lack of jurisdiction.

Although Plaintiff asserts claims under Title VII, the Rehabilitation Act, and the ADEA based on the 2015 and 2017 EEO complaints, those claims were resolved by the Agreement. While Congress waived sovereign immunity under Title VII, the Rehabilitation Act, and the ADEA for actions seeking relief for unlawful employment practices where the federal government is the employer, the government's waiver of sovereign immunity for such claims does not extend to contract claims regarding settlement agreements. *See Charles v. McHugh*, 613 F. App'x 330, 334

9

(5th Cir. 2015) (citing cases). In *Charles*, a federal employee reached a settlement agreement with her employer to resolve her Title VII claims. She later filed suit in federal court seeking to rescind the agreement on grounds that she was coerced and not competent to sign the agreement. The Fifth Circuit held that her claims were not Title VII claims, but contract claims. "That the contract was a settlement agreement for Title VII claims is tangential." *Id.* at 335. Because the employee's claims were contract claims, not Title VII claims, and because Congress did not explicitly waive sovereign immunity for such claims, the district court correctly dismissed the case for lack of subject matter jurisdiction. *Id*.

Like the employee in *Charles*, Plaintiff seeks to pursue settled discrimination claims by rescinding the underlying settlement agreement. Even though her complaint does not explicitly assert claims for breach of contract or recession, she alleges that Agency did not comply with the Agreement. (doc. 14 at 1.) She also alleges that the Agreement was fraud and one-sided, and that she was medicated and did not understand the MSPB process when she entered into the Agreement. (*Id.*) She seeks $300,000 in compensatory damages, back pay, reimbursed health and dental benefits, 600 hours annual leave, and approximately $16,000 in attorney's fees. (doc. 13 at 2-3.) "Properly construed, [Plaintiff's claims] are contract claims." *Charles*, 613 F. App'x at 333. The federal government's waiver of sovereign immunity under Title VII, the Rehabilitation Act, and the ADEA does not extend to such claims. Rather, the Court of Federal Claims has exclusive jurisdiction over these claims as Plaintiff clearly seeks more than $10,000 in damages in this action. *See Patterson*, 249 F. App'x at 996 ("[The employee's] damages claim for breach of the settlement agreement is a breach of contract claim against the United States seeking damages greater than $10,000, and as such should have been brought in the Court of Claims under the Tucker Act.").

Plaintiff did not respond to Defendant's argument that there is no jurisdiction over her claims to enforce or rescind the Agreement. "[A]s the party seeking to invoke this Court's jurisdiction[, she] bears the burden of proving jurisdiction lies, . . . and [s]he has failed to meet that burden here." *Maxie v. United States Postal Serv.*, No. 3:08-CV-1688-B, 2009 WL 2486034, at *3 (N.D. Tex. Aug. 13, 2009) (internal citation omitted); *see also St. Tammany Parish*, 556 F.3d at 315 (the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity). Because she has failed to meet her burden to show an "unequivocal waiver of sovereign immunity," her contract claims, which seek either enforcement or rescission of the Agreement, should be dismissed for lack of subject matter jurisdiction. *See Charles*, 613 F. App'x at 335; *Patterson*, 249 F. App'x at 996; *see also Enplanar, Inc. v. Marsh*, 25 F.3d 1043, No. 93-7633, 1994 WL 261088, at *2 (5th Cir. June 2, 1994) (affirming dismissal of claim for lack of subject matter jurisdiction where plaintiff failed to allege damages within the jurisdictional limits of the Tucker Act).

**C.** **Exhaustion**

Defendant moves to dismiss any discrimination, retaliation, or harassment claims not covered by the Agreement or 2017 EEO action for failure to exhaust administrative remedies. (doc. 31 at 7.)

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). It also makes it unlawful for employers to retaliate against an individual because she "has opposed any practice made an unlawful employment practice by [Title VII], or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a). The ADEA likewise makes it unlawful for an employer to discriminate against an individual based on

11

age, or "because such individual ... has opposed any practice made unlawful" by the ADEA. 29 U.S.C. § 623(a)(1), (d). The Rehabilitation Act provides "the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (citing 29 U.S.C. § 701 *et seq.*).

Before an individual can pursue a Title VII claim in federal court, she must timely exhaust her available administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). The Supreme Court has clarified that the mandatory exhaustion requirement of Title VII is "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Tex v. Davis*, 139 S.Ct. 1843, 1851 (2019). It is instead a condition precedent to maintaining a Title VII claim. *See id.* In the Rehabilitation Act context, an employee complaining of discrimination or retaliation must similarly exhaust her administrative remedies as a precondition to bringing an action in federal court. *Smith v. Potter*, 400 F. App'x 806, 811 (5th Cir. 2010) (quoting *Pacheco*, 448 F.3d at 788); *see also Bailey v. Napolitano*, No. 3:11-CV-1110-L, 2012 WL 1658790, at *5 (N.D. Tex. May 11, 2012) (finding that exhaustion of administrative remedies for Title VII and Rehabilitation Act claims was a condition precedent). A federal employee pursuing an ADEA claim through the EEOC administrative process must also exhaust her administrative remedies before filing an action in federal court. *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) (citing *White v. Frank*, 895 F.2d 243 (5th Cir. 1990)); *see also Herod v. Potter*, 255 F. App'x 894, 896 (5th Cir. 2007) (applying administrative exhaustion requirement to federal employee alleging ADEA claim).[6]

---

[6]While exhaustion of administrative remedies is mandatory for all Title VII and Rehabilitation Act claims, federal employees asserting claims under the ADEA may either "invoke the EEOC's administrative process and then file a civil action in federal district court if [s]he is not satisfied with h[er] administrative remedies," or she may "present the merits of h[er] claim to a federal court in the first instance." *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 5-6 (1991) (citing 29 U.S.C. §§ 633a(b)-(d)). Because Plaintiff sought EEO counseling and pursued her ADEA claim administratively, she is required to exhaust her administrative remedies before filing suit in federal court. *Hill v. Dep't*

12

When the failure to exhaust is a condition precedent rather than a jurisdictional prerequisite, a motion to dismiss based on such failure is properly filed under Rule 12(b)(6) rather than Rule 12(b)(1). *See Gates v. City of Dallas, Tex.*, No. 3:96-CV-2198-D, 1997 WL 405144 at *1 (N.D. Tex. July 15, 1997); *see also Obinyan v. Prime Therapeutics LLC*, No. 18-CV-0933-D (BK), 2018 WL 7078182, at *2 (N.D. Tex. Dec. 13, 2018), *adopted by* 2019 WL 266877 (N.D. Tex. Jan. 18, 2019) (addressing administrative exhaustion arguments "under the rubric of Rule 12(b)(6)"). Defendant's motion to dismiss for failure to exhaust administrative remedies will therefore be considered under Rule 12(b)(6).

### III. RULE 12(b)(6)

**A.** **Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

---

*of Veterans Affs.*, No. 08-60532, 2009 WL 348767, at *3 (5th Cir. Feb. 12, 2009); *see also Tolbert*, 916 F.2d at 249 (explaining that an ADEA plaintiff who chooses to pursue an administrative remedy "must see it through to the end").

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007);

14

*Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). If "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293-94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached documents to her complaint, including the EEOC's decision on reconsideration, her EEO complaints, and letters from the EEOC regarding her complaints. (docs. 13 at 8-25; 14 at 2-60.) Because these documents are attached to her complaint, they are considered part of the pleadings. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498. Defendant attached to his motion to dismiss some of the filings from the EEOC and MSPB actions,

15

including Agency's motion to dismiss the EEO complaint, Plaintiff's MSPB requests for reconsideration, the decisions from the EEOC and MSPB, and the transcript from the MSPB hearing. (doc. 32-1 at 1-79.) Because the documents are referenced in Plaintiff's complaint, are central to her claims, and are matters of public record, they are considered part of the pleadings. *See Collins*, 224 F.3d at 499; *Norris*, 500 F.3d at 461 n.9; *see also Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider in a motion to dismiss.").

Defendant also attached with his motion to dismiss the declaration of Agency's employee. (doc. 32-1 at 79-80.) This document was not referenced in Plaintiff's complaint and is not a matter of public record, so it is not part of the pleadings for purposes of the 12(b)(6) motion. *See Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014) (considering documents attached to a motion to dismiss as part of the pleadings only as long as they were central to the plaintiff's claim and referenced in the complaint). Because the declaration is not part of the pleadings for purposes of the 12(b)(6) motion, and is not being considered for purposes of this motion, it is unnecessary to treat the motion to dismiss as a summary judgment motion.

**B.     Failure to Exhaust**

Defendant argues that any remaining Title VII, Rehabilitation Act, and ADEA claims, including claims not covered by the terms of the Agreement and the underlying EEO action, should be dismissed because she did not file an administrative charge for those claims. (doc. 31 at 7.)

As discussed, a federal employee must exhaust her administrative remedies for Title VII and

16

Rehabilitation Act claims and for ADEA claims pursued through the administrative process prior to bringing an action on those claims in federal court. *See Taylor*, 296 F.3d at 378-79; *Prewitt*, 662 F.2d at 304; *Tolbert*, 916 F.2d at 248. To properly exhaust administrative remedies, a federal employee must initiate contact and request informal counseling from an agency EEO counselor within 45 days of the date of the matter alleged to be discriminatory. *See* 29 C.F.R. § 1614.105(a)(1); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). If the counselor is unable to resolve the matter, the federal employee must then file a charge of discrimination with the EEO division of her agency and receive a "right to sue" letter before filing suit. *See* 42 U.S.C. § 2000e-5(e)(1); *see also* 29 C.F.R. § 1614.106; *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). Courts have routinely held that a plaintiff's complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "fails to allege exhaustion of administrative remedies." *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *see Johnson v. U.S. Postal Serv.*, No. 3:15-CV-1081-L-BK, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim rather than for lack of jurisdiction where the plaintiff failed to allege exhaustion of administrative remedies); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 4:06-CV-194-A, 2006 WL 2370670, at *2 (N.D. Tex. Aug. 16, 2006) (determining that claims under the ADA and the Rehabilitation Act were subject to dismissal "because [the plaintiff] has failed to allege that he exhausted his . . . administrative remedies . . . ."); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp.2d 467, 471 (N.D. Tex. 2003) (dismissing plaintiff's claim under Rule 12(b)(6) where plaintiff alleged that he filed a charge but failed to allege that a right to sue letter was issued or received); *compare Vernon v. Tangipahoa Par. Sch. Bd.*, No. 15-2083, 2016 WL 3144383, at *2 (E.D. La. June 6, 2016) (finding that, even though not alleged

in her complaint, plaintiff exhausted her administrative remedies by producing her EEOC charge and right to sue letter in response to a motion to dismiss under Rule 12(b)(6)).

Here, Plaintiff alleges that she was subjected to discrimination, retaliation, and harassment on the basis of race, color, sex, age, and disability, and that the issues were not resolved through ADR. (*See* doc. 2 at 1.) She does not allege that she sought counseling, she filed an EEO complaint, the EEOC issued a right-to-sue letter, or that she ever received a right-to-sue letter regarding claims against the Agency other than those resolved by the Agreement or that were alleged in the underlying EEO action. She did not respond to Defendant's argument that she failed to exhaust her administrative remedies. Because she has failed to allege that she has met the precondition for filing suit by exhausting her available administrative remedies, any Title VII, Rehabilitation Act, and ADEA claims that are not related to the Agreement or her underlying EEOC action should be dismissed without prejudice.[7] *See Hoffman*, 596 F.2d at 685 ("A judicial complaint that fails to allege exhaustion of administrative remedies . . . is properly subject to dismissal."); *Carr*, 2006 WL 2370670, at *2 (dismissing *pro se* plaintiff's claims under the Rehabilitation Act for failure to allege exhaustion); *Shabazz*, 300 F. Supp. 2d at 471 (dismissing *pro se* plaintiff's Title VII claim without prejudice where the plaintiff failed to allege exhaustion of administrative remedies in his complaint).

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v.*

---

[7] "When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)).

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. Courts, nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), or if it finds that the plaintiff has alleged his or her best case, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). When a court "outline[s] in [its] opinion the deficiencies" of plaintiff's complaint and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at *2-*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Here, Plaintiff has supplemented her complaint and filed multiple motions and notices regarding the allegations raised in her complaint. It therefore appears that she has alleged her best case, and any further opportunity to amend is unwarranted.

## V. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claims should be **DISMISSED without prejudice**.

**SO RECOMMENDED** on this 28th day of June, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

20